IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JOSE PIERRE, <br> Institutional I.D. No. 00418-265, <br><br> Plaintiff, <br><br> v. <br><br> GEO GROUP, INC., <br> d/b/a/ Big Spring Correctional Center, <br> *et al.*, <br> Defendants. | § § § § § § § § § § § § | <br><br><br><br><br> Civil Action No. 1:14-CV-162-BL <br><br><br><br><br> Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Jose Pierre, proceeding *pro se* and *in forma pauperis*, originally filed his complaint pursuant to 42 U.S.C. § 1983 on October 22, 2014. He alleged the Defendants, individuals and entities, were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The District Court transferred the case to this court to conduct a screening process pursuant to 28 U.S.C. §§ 1915–1915A. On March 27, 2015, Plaintiff testified at an evidentiary hearing before this court pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff has not consented to proceed before a United States Magistrate Judge.

## I. BACKGROUND

When the events giving rise to this suit occurred, Plaintiff was an inmate at the Big Spring Correctional Center (BSCC) in Big Spring, Texas. BSCC is operated by GEO Group, Inc. (GEO), a private entity under contract with the Federal Bureau of Prisons (BOP). GEO in turn contracted with Correctional Care Solutions (CCS), a private entity medical care provider, to handle medical care and treatment of the inmates at BSCC.

Plaintiff alleges that in July of 2012, he "had a muscular strain which aggravated [an] old disc condition" in his back. (Doc. 1, p. 38). Plaintiff experienced pain in his lower back and through his left shoulder and arm. From an unrelated condition, Plaintiff also experienced pain in both his knees. Plaintiff submitted an informal grievance requesting a medical appointment, which was answered by Rose Perez at GEO's Health Services Administration (HSA) on August 6, 2012. Perez informed Plaintiff of the proper channels he would need to navigate if he wanted medical treatment. (Doc. 1, p. 26).

On August 16, 2012, Plaintiff was examined by a nurse, who gave Plaintiff anti-inflammatory medications, gave Plaintiff instructions to avoid strenuous physical activity, and informed Plaintiff about several back stretching exercises. In a follow up appointment with a physician's assistant on August 22, 2012, x-rays were taken of Plaintiff's knees, left shoulder, and back. The PA compared Plaintiff's x-rays with x-rays taken the year before and found early signs of osteoarthritis, but no other injury. Plaintiff was fifty years old in 2012. The PA advised Plaintiff about osteoarthritis due to his age, prescribed Plaintiff non-steroidal anti-inflammatory medication for pain, and again advised Plaintiff of back stretching exercises.

On October 21, 2012, Plaintiff submitted a sick call request complaining of tingling and numbness in his left arm, and seeking a neurologist. A nurse performed a neurological examination and noted Plaintiff had no neurologic deficits. The nurse stated that Plaintiff's condition did not warrant referral to a neurologist. Plaintiff disagreed and appealed to Defendant Warden Sims on November 2, 2012. Warden Sims responded that though Plaintiff was displeased with the nurse's conclusion that based on the neurological examination and x-rays, no referral to a neurologist was required, the medical personnel had been responsive to Plaintiff's medical needs. Plaintiff appealed Warden Sims's letter to the BOP Regional Office on

November 28, 2012. The BOP Regional Office responded on December 4, 2012, rejecting Plaintiff's appeal as inappropriately filed. The BOP Regional Office informed Plaintiff that it was not the proper place to appeal his concern; he would need to utilize the grievance procedures at BSCC.

It is Plaintiff's contention that he has exhausted all administrative remedies at BSCC. He claims his informal grievance was step one, his appeal to Warden Sims was step two, and his appeal to the BOP Regional Office was step three.[1] Plaintiff's complaint alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. He requests injunctive relief requiring Defendants "to provide proper medical care to avoid further damage, and, in the alternative, monetary damages." (Doc. 1, p. 7).

In an *in forma pauperis* prisoner civil rights action against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915–1915A to dismiss the complaint or any portion of the complaint which is frivolous or malicious or fails to state a claim upon which relief may be granted. *See Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). A complaint is frivolous when it is based on an indisputably meritless legal theory. *Id.*

Courts must construe *pro se* prisoners' complaints liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But "the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court." *Poux v. Drew*, 2010 U.S. Dist. LEXIS 113433, 2010 WL 4281824 (D. S.C. Sept. 22, 2010) (citing *Weller v. Dep't of Social Servs.*, 901 F.2d 387 (4th Cir. 1990)).

---

[1] Because it concludes that Plaintiff's complaint is frivolous, the court does not undertake an examination of whether Plaintiff has exhausted his administrative remedies prior to bringing this suit. *See U.S. v. Del Toro-Alejandre*, 489 F.3d 721, 722–23 (5th Cir. 2007) (noting the Supreme Court has held it is permissible for "a district court to dismiss *sua sponte* a prisoner's complaint for failure to exhaust in the rare instance where the prisoner's failure to exhaust appeared on the face of his complaint."). *See Jones v. Bock*, 549 U.S. 199 (2007).

## II. DISCUSSION

### A.

Firstly, Plaintiff is a federal prisoner convicted of a federal crime. Thus, although it alleges a violation of 42 U.S.C. § 1983, Plaintiff's complaint must be interpreted as alleging claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See, e.g., Eltayib v. Cornell Companies, Inc.*, 533 F.App'x 414–15 (5th Cir. 2013) ("[Section] 1983 applies to constitutional violations by *state, rather than federal*, officials.") (emphasis in original) (internal quotation marks omitted); *Abate v. Southern Pacific Transp. Co.*, 993 F.2d 107, 112 n. 14 (5th Cir. 1993) ("*Bivens* is the federal counterpart of § 1983. In effect, it extends the protections afforded by § 1983 to parties injured by federal actors not liable under § 1983.").

### B.

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297, 303 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But "[d]eliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.*; *accord Easter v. Powell*, 467 F.2d 459, 465 (5th Cir. 2006). Negligence or medical malpractice does not amount to a constitutional violation. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Likewise, a disagreement between an inmate and his physician concerning whether certain medical care is appropriate is not enough to make out a deliberate indifference claim, and "the decision whether to provide additional treatment is a classic example of a matter

of medical judgment." *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006); *see also Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

### C.

The court notes Plaintiff is no longer housed in BSCC or in the custody of GEO. Nor is Plaintiff still supervised or cared for by any of the Defendants in this action. Plaintiff is now in BOP custody at the Federal Correctional Institution (FCI) in Herlong, California. Thus, any injunction against the named Defendants regarding Plaintiff's care at BSCC or in GEO custody is moot. *See James v. Mason*, 513 F.App'x 364, 368 (5th Cir. 2013) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)). The court next considers Plaintiff's request for damages.

#### 1. Institutional Defendants

The United States Supreme Court has made clear that no *Bivens* remedy is available against private entities which, acting under color of federal law, allegedly violate an inmate's constitutional rights. *Correctional Services Corporation v. Malesko*, 534 U.S. 61 (2001). As noted, GEO and CCS are private entities. Therefore, Plaintiff's *Bivens* claims against these private entities have no legal legs to stand on. Plaintiff's *Bivens* claims against GEO and CCS are based on an indisputably meritless legal theory, and should be dismissed as frivolous. *Harris*, 198 F.3d at 156.[2]

#### 2. Individual Defendants

Plaintiff does not bring suit against any of his primary care professionals. At his *Spears* hearing, Plaintiff asserted that Drs. Molina and Nelson were in charge of HSA during Plaintiff's incarceration. Neither individually treated Plaintiff; instead, Plaintiff stated that both were in positions where they could have secured help for him and they failed to do so. Plaintiff's theory

---

[2] The court notes, without expressing opinion on a state action in Plaitiff's case, that state tort law encompasses damages actions concerning claims of denial of medical treatment. *Minneci v. Pollard*, 132 S.Ct. 617, 626 (2012).

of liability as to Warden Sims is similar, as made clear at the *Spears* hearing. Plaintiff claims Warden Sims was in charge of the prison facility that failed to get him the treatment he required. Thus, it is plain that Plaintiff is pursuing his *Bivens* claims against Drs. Molina and Nelson, and Warden Sims on a theory of supervisory liability.

"A *Bivens* action must be premised upon the personal involvement of the named defendants. Under *Bivens*, an individual cannot be held liable under a theory of *respondeat superior*. Instead, a supervisory federal employee and/or official may be held liable only where he has personal involvement in the acts that caused the deprivation of a constitutional right or if he implements or enforces a policy that causally results in a deprivation of constitutional rights." *Martikean v. U.S.*, No. 3:11-CV-1774-M-BH, 2012 WL 1986919 (N.D. Tex. Apr. 6, 2012) (citations omitted); *accord FDIC v. Meyer*, 510 U.S. 471, 485 (1994); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010).

At his *Spears* hearing, Plaintiff testified that Drs. Molina and Nelson never personally treated him, discounting the requirement of personal involvement. *See Bustos*, 599 F.3d at 468. Nor has Plaintiff alleged that Drs. Molina and Nelson implemented or enforced a policy that violated his constitutional rights. *See id.* In fact, Plaintiff testified that he believed none of the Defendants intended to harm him. Plaintiff concedes CCS personnel examined him several times, and each time gave him a course of treatment including medication and stretching exercises. That Plaintiff disagreed with this course of treatment does not mean his constitutional rights have been violated. *Gobert*, 463 F.3d at 345–46.

Further, Plaintiff has not alleged that Warden Sims was personally involved or implemented a policy that causally resulted in a violation of his constitutional rights. As noted, Plaintiff conceded at his *Spears* hearing that he did not think Warden Sims intended to harm him.

Conceding lack of intent, the best Plaintiff can allege against Warden Sims is negligence, which of course will not support a *Bivens* claim. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.").

In his complaint, Plaintiff alleges that he was refused treatment because it would be too costly and because his release date was quickly approaching. At his *Spears* hearing, Plaintiff clarified that refusal of treatment by reason of his release date was at most hunch and rumor. Plaintiff was able to offer no additional factual support to these allegations. Without more, these conclusory allegations, absent any factual matter to substantiate, fail to state a *Bivens* claim. *See Iqbal*, 556 U.S. at 678; *Hinojosa v. U.S. Bureau of Prisons*, 506 F.App'x 280, 284 (5th Cir. 2013). As to the costliness of treatment, even assuming Plaintiff was told the prison could not afford outside treatment for Plaintiff, Plaintiff conceded that no medical personnel ever stated he required any outside treatment. The facts amount to a claim that medical personnel thought he needed one type of procedure, namely an x-ray, and he thought he needed another type, namely a CT scan or an MRI. As noted, such a disagreement in treatment required does not support a *Bivens* cause of action. *Gobert*, 463 F.3d at 345–46; *Banuelos*, 41 F.3d at 235.

In sum, the Supreme Court has foreclosed a *Bivens* remedy in this case against the institutional Defendants. Plaintiff's own allegations have foreclosed a *Bivens* remedy against the individual Defendants.

## IV. RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's claim be **DISMISSED AS FRIVOLOUS**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated this 8th day of April, 2015.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**